Administrator, U.S. Environmental Protection Agency, and his official capacity. Mr. Somers, to the appellant. Mr. Ludland, to the appellant. Mr. Somers, good morning. Good morning, Your Honors. May it please the Court, Gordon Somers for Appellant, Sierra Club. With me at counsel table is Jim Pugh. I'd like to reserve three minutes for rebuttal, please. For years, the Supreme Court has attempted to rein in the misuse of the term jurisdictional by lower courts, and yet that's exactly the sort of error that we are here today appealing, because the lower court mistakenly understood the central merits question in this case, which is how you interpret the substantive requirements of the Clean Air Act as a matter of jurisdiction. Now, it's well established that the existence of a cause of action is not jurisdictional. But there are some statutes that are both, that both create the cause of action and provide subject matter jurisdiction. That's right, Your Honor. Why isn't this one of them, especially since the statute at issue says the district court shall have jurisdiction? Well, Your Honor, the parties, I believe, agree that Section 7604 provides both the relevant waiver of sovereign immunity and the cause of action. The Supreme Court's holding in Steele Co. binds this circuit, and Steele Co. says very plainly that where these issues overlap, the Court needs to first establish jurisdiction. Well, it didn't say when the issues overlap, because there was no issue in Steele Co. whether that statute was also jurisdictional. It was a statute that purely provided the cause of action, and the jurisdiction was based on a different statute. Well, Your Honor, what the lower court did in Steele Co. was it looked at the citizenship provision, found that the citizenship provision in the district court's opinion there did not allow the suit to go forward and dismissed for jurisdiction. And Judge Scalia, writing in Steele Co., began by saying very clearly, this is a merits question. And that was important because the federal questions statute has a similar sort of overlap where the issue of whether an issue arises under federal law, one might say if you don't actually have a cause of action, then there is no federal question. But as here, the issue is actually, is there an arguable cause of action? In other words, is there a question under federal law here? Have you alleged a nondiscretionary duty? That's the grant of jurisdiction. What difference does it make? Your Honor, there's myriad consequences. Here, most importantly, it led the lower court to misunderstand this court's holding in Sierra Club v. Thomas. But it also has very grave consequences for litigants because it would essentially turn every statutory interpretation question in one of these citizen suits into a question of jurisdiction that could then be raised to a sponte, later on in litigation could be decided before something like standing. And the error here that occurred was it also encourages the district courts to look at these statutory questions through this jurisdictional lens where they then are prone to apply things like the sovereign immunity narrow construction axiom. And so here, the district court, looking at this as a jurisdictional question, misunderstood how Sierra Club v. Thomas operates. That case is about jurisdiction. And so all it does is route claims between the district court and the circuit court. It essentially says if you are bringing a nondiscretionary duty claim, that's something the district court is empowered to decide. And if it is essentially a claim for review, that goes to the circuit. What the district court seemed to understand, based on the way it was quoting from that case, is that that case was somehow creating this candidate of interpretation for how you interpret the statute, which Thomas simply doesn't do. The only claim in Thomas was unreasonable delay. And there's actually very little statutory analysis happening there. Don't you have to read the citizen suit provision in that way, given the nature of what a citizen suit provision is? I mean, do you think Congress could grant a citizen suit provision against the executive branch for a duty that was discretionary? Well, it has, Your Honor. For a discretionary duty? Yes, Your Honor. In the 1990 amendments, it actually responded to Thomas in part by amending 7604 and adding this jurisdictional part at the end of it and allowing suit for unreasonable delay. And under Thomas, the distinction between these unreasonable delay suits and the suits under 8-2 for nondiscretionary duties is whether or not it's a discretionary duty. What Thomas does is it essentially tells you what you have to plead to be pleading a nondiscretionary duty. So you have to have a deadline and a categorical duty. And so it has to be something where it's, you know, do this by a certain date. And then the district can look at what's happening. Isn't that essentially part of the jurisdiction? Well, Your Honor, they overlap, certainly, because it's both the waiver of sovereign immunity and the cause of action. But it is fundamentally the cause of action. It's – that is – these are the elements of the cause of action is have you alleged the violation of a duty which is not discretionary. And that's – it can't – I want to be very clear that it cannot be that that is an entirely jurisdictional question, because otherwise the court would be going through this exercise of interpreting this Clean Air Act substantive requirements without knowing if it had jurisdiction to do so. What Congress did when it granted jurisdiction was an empowerment. Well, you always have jurisdiction to determine whether we have jurisdiction. Certainly, Your Honor. I mean, that's the way that it works. It's, you know, it's not a chicken or egg problem. We've solved that chicken or egg problem by saying we don't care whether it's the chicken or the egg. We want to decide which one it is. Well, that's certainly right, Your Honor. But as the Supreme Court warned in Steel Co., if you do that in these cases where there's overlap, where you turn the cause of action into the jurisdictional question, it makes every statutory question in one of these citizens' suits jurisdictional. And that can't be right. What the court can do to decide it as jurisdictional is look at 7604. It can't be right. Why? I mean, if the statute is jurisdictional and that's what it does, then that's what it does. But there are lots of statutes, citizens' suit statutes, that aren't jurisdictional. And just for the ones that are, then we do that analysis. I don't understand what the doctrinal problem or slippery slope is here. The slippery slope, Your Honor, is that it turns this exercise of interpreting the Clean Air Act requirements for any provision that somebody raised under a citizen's suit into a question of jurisdiction. Jurisdiction, as the Supreme Court has defined it, is the power to declare what the law is. And so while certainly the court has power to decide its jurisdiction, it can interpret 7604, interpret that. Once you get into interpreting what exactly Congress wanted EPA to do when in these substantive requirements, that is a merits exercise. Well, I'd like to get to the merits and try to understand something. So in the district court, there was discussion about what the five-year deadline means in the statute, subsection B3. What are we talking about, 7429 or 7629? 7429. 7429. And the district court said, well, certainly the EPA has to promulgate a fifth within five years. And in its opinion, it said that EPA conceded that. I looked at the transcript, and it looks like EPA did all they could to kind of concede it without conceding it. But we'll see what counsel has to say about that in a minute. But I believe it was you who said that that was not what you put in your notice of suit. So I'm assuming you put in your notice of suit that the nondiscretionary duty was to promulgate a fifth within two years? That's right, Your Honor. So are you saying that you are not pursuing relief if they're past the deadline, if we conclude that the deadline is a five-year deadline rather than a two-year deadline? That's right, Your Honor. We haven't pled that. But I want to make sure that this Court understands that the district court seemed confused because the five-year deadline is the five-year compliance deadline. It's a requirement of the plan. It's not clearly a deadline on EPA. And so the remedy there would be an unreasonable delay suit. That's what EPA argued. That would make this provision essentially the odd man out within 7429, where every other piece of that statutory scheme is a clear, date-certain deadline to do something within one year, 180 days, within two years. And the point of that is, as this Court has held, under unreasonable delay suits, EPA gets considerable deference. That's not what Congress wanted. The text and the legislative history make very clear that Congress ought to eliminate EPA's discretion here. I did so with deadlines that could be enforced. Well, let me tell you, you know, I'm too old to play poker. You know, I could get hit by a bus tomorrow or whatever. So I'm just going to tell you like it is. The way I see this statute is that Congress definitely wanted a deadline. They wanted a deadline. They wanted EPA, they wanted the state first, once EPA promulgated the guidelines, to submit its plan to the EPA within a year. They wanted EPA, within 180 days of receiving that state plan, to give it an approval or disapproval. If it were a disapproval, if it's an approval, fine, then that plan will require compliance within three years, right? Or no later than five years after the guideline was promulgated. If it's a disapproval, then the state can resubmit a plan. But the way I see it is that if they don't resubmit it within basically another six months after they get the disapproval from EPA, they're out of luck because that two years in the statute means that EPA has to promulgate its own plan unless they get an approvable plan, meaning that a state has submitted a plan to them after a prior disapproval within the two-year deadline. I don't see there being a hard deadline for the FIP other than the five years. Congress is very clear that it says that such plan, meaning the federal plan, shall assure compliance by five years from the promulgation of the guidelines. So if that's not a hard and fast deadline, I don't know what is. But you're saying that if that's the way that we read the statute, you're not seeking that relief even though they're beyond five years because you didn't plead that? That's right, Your Honor, but I want to make one point briefly in response. It's that EPA knows at the one-year mark that it needs to do a plan because there's only one federal plan. And all EPA is doing there is essentially adopting the model rule that it creates when it develops the guidelines. This isn't just one of these exercises where they have to do something for each state and develop a whole new rule. They're essentially adopting something they've already got, and EPA's regulations reflect this. In past FIPs, past federal plans, EPA cited a provision that it also uses under Section 111, which is 40 CFR 60.27, which lays out that EPA will begin creating this plan after that initial submission deadline as soon as any state fails to submit something. And I agree if a state submits something later, then that's fine. They won't be covered by that federal plan. They can come in at any point and do that. But what Congress wanted, as is abundantly clear from all of these deadlines, was to ensure these protections had effect. What's happened here is this court in 2007, in the NRDC against EPA case, invalidated EPA's assist redefinitions rule because that rule essentially exempted a number of commercial and industrial incinerators that this court held the plan would require EPA to regulate. EPA amended its regulations to cover those units by updating the standards. And yet here we are a decade later, and none of those units are subject to standards in a number of states, like California, Texas, Pennsylvania, and others, because they've never been implemented. So the only way any of Congress's mandates here would have effect is if there's a clear deadline that ensures a federal plan comes out and gives units time to reach compliance by that five-year mark. I'd like to see it pass by time. Okay. Actually, I have one more question. Are you also still continuing to rely on the APA? Yes, Your Honor. Can you say something more about that argument, given the specific carve-out to Section 702 of the APA? Absolutely, Your Honor. EPA seems to read 7604 as somehow forbidding relief. And it's important to understand that 7604 is also the cause of action here, because EPA's argument boils down to this claim that essentially if we win on our cause of action, we have jurisdiction, whether under the Clean Air Act or under the EPA. And if we don't, then there's no jurisdiction. And for all the reasons outlined under Stoker, that can't be right, because the court has to decide it has jurisdiction, and then you can resolve the case. Jurisdiction can't depend on your success on the merits. But additionally, this court has held repeatedly that the APA waives relief under any statute, whether under the APA or – sorry, waives sovereign immunity under any statute, whether it's the APA or not. And the Supreme Court in Bennett, under a very similar citizenship provision, wrote that nobody could even contend that that citizenship provision, which didn't even have the express saving clause that 7604E provides, that nobody could contend that that forbid relief. But Bennett's reading of the statute in that context wasn't an authoritative reading. I mean, Bennett was focused on other issues. Your Honor, yes, Bennett addressed a number of issues, but it did allow the suit to go forward under the EPA, so I do believe it carries significant weight. I would add that EPA had no response to that so far. All right, we'll give you a couple minutes of your time. Thank you. May it please the Court, Robert Lundin representing EPA. I'll start off with a jurisdictional issue. The district court here correctly dismissed because there's no applicable waiver of sovereign immunity. The waiver of sovereign immunity in 7604A2 doesn't apply here. Mr. Summers is right. This is a case of overlap. We've got an overlapping jurisdictional question with the merits. But that doesn't mean the dismissal for jurisdiction is wrong. It means it's right. If there's no fit in 7604A2, then sovereign immunity is not waived, and the district court got it right and dismissed for lack of jurisdiction. As to Steel Company, that case has nothing to do with sovereign immunity. Sovereign immunity is not mentioned. It's clear in Steel Company it's just talking about overlap between cause of action and the merits. And the cause of action question is not jurisdictional, so we just don't have the same situation here where we have a defined waiver of sovereign immunity, which then informs district court's jurisdiction. How do we know that 7604 is a waiver of sovereign immunity as opposed to just establishing jurisdiction and defining what the cause of action is? I think one reason we know it is because there's no other applicable waiver here that they've identified. I'll talk about the APA in a minute. They need one. That's the one they've pointed to as a waiver of sovereign immunity. You can't sue the United States without a waiver of sovereign immunity, and the two they've pointed to here are 7604A and the APA. So it has to be one or the other on their theory of the case. 7604A, they'll think it can be 702. Well, that's the APA provision. It cannot be in this case because 702 says, if another, I'm paraphrasing, if another statute expressly or impliedly forbids relief, then it doesn't apply. And in the Matche v. Nash case in the Supreme Court, the court explained 702 is not a backdoor to jurisdiction under another statute. So if we're talking about, in that case, the Black Title Act or here, the Clean Air Act, you can't use 702 to increase the scope of the jurisdiction or the waiver of sovereign immunity in that other statute. So that's, the Supreme Court's answered that, and it's clear here that you can't use, then, 702 and the APA to expand the jurisdiction and the waiver of sovereign immunity in 7604A. Bennett v. Speer, which Plaintiff relies on, doesn't change this analysis at all. There, the question was, can you bring an APA claim, an APA-based cause of action, or is it precluded by the Endangered Species Act citizenship provision? And the answer there was the Supreme Court said no, but they're very clear here that they haven't brought an APA claim. They've brought a Clean Air Act non-discretionary duty claim. They're trying to use the APA's waiver of sovereign immunity to expand that waiver, but they haven't pled a claim under the APA. So Bennett v. Speer's discussion of that issue just is not relevant here. I mentioned Steel Company already. You know, if there's no further questions on jurisdiction, we think that is straightforward. And at the end of the day, as a question suggested, it doesn't make a difference in this case to the outcome. Either they've pleaded a, either they have a non-discretionary duty claim or they don't. We think the right answer is dismissal for lack of jurisdiction, but in any event, it leads to the same place. And this court, we cited a couple cases where this court has said, well, we're not sure if it's jurisdictional or maybe it's not jurisdictional. We can affirm on this alternative basis. So I have one question. If we did determine that the duty here was discretionary, why not dismiss for failure to state a claim? Well, we think the right answer is, we think the big picture right answer is dismiss. We think the subset right answer is for failure for lack of jurisdiction, and that's because here we have this overlap. We have the waiver of sovereign immunity, which is informed by whether it's a non-discretionary duty or not. And so when it's not a non-discretionary duty, we think the right answer is dismissal for lack of jurisdiction. That's what this court has done in the Federal Tort Claims Act cases we cited, Counsel for American-Islamic Relations and Wafflin. It's what it did in an unpublished case, the American Road and Transportation Builders. It's what the Fourth Circuit did in Marine Energy, the Ninth Circuit in Wild Earth Guardians. So the case law on this, we think, is really clear. If in this context, in the Clean Air Act 7604, there's no non-discretionary duty, the right answer is to dismiss for lack of jurisdiction. But that said, the right answer is to dismiss because there is no such duty. And turning to that, turning to the duty question in 7429B3, it's been settled in this court since 1987, when Sierra Club v. Thomas came out, that to prevail on this sort of claim, the non-discretionary duty claim, you have to show that there's a clear-cut non-discretionary duty to act by a date certain. On that line, what does the last sentence of B3 mean? The last sentence of B3 means that the plan, when it's promulgated, when a federal plan is promulgated by EPA, has to assure compliance within five years. Five years of the date that the relevant guidelines are promulgated. Right. But it doesn't require promulgation of the plan on any time frame. How can a plan that is promulgated more than five years after the guidelines are promulgated assure compliance with the guidelines within five years? Well, it would not assure compliance with the guidelines within five years. So you have to have a FIP within five years of the guidelines. I think the phrasing of this means the defect is in the plan and not in the failure to promulgate the plan. Do you know what my response is to that? I think you may disagree. Two points on this quickly. The language of that last sentence of B3 says, such plan shall assure. And so that's the mandatory requirement. What the plan has to require. Now, I understand your point. Everything else in this is a deadline for doing something, as in doing a plan. And you're saying that five years doesn't mean a deadline for when the plan must be done. It means some sort of toothless content requirement that says, you know, comply within five years, but we can say that ten years after the guidelines. And as long as we say that, then we've written a plan that complies with the statute. Is that your interpretation of that sentence? I don't think that's accurate because it's not toothless. What it's relevant to is not that mandatory duty with a fixed deadline to act by a date certain. It's relevant to an unreasonable delay claim. So in that context, this court in the track case with the track factors. Well, it seemed to me that they would have a lay down suit. They'd have four aces. Got it. With a wild card. We have a backup argument. They haven't pleaded that claim here. If you look at joint appendix page 50, that's their claim. If I were them, I'd be in the courthouse tomorrow filing that claim. They may be able to do that. In any event, in this case, their claim is clear that it's based on this. They want to establish law on this two year language. And that's what they're seeking here. They've made a litigation choice. It's not like they're going to read all the way through B3. They read it all and they said, here's our claim. Two years. That's it. You have to do it in two years. If you look at their opening brief, pages 36 to 37, they double down on that. They say, here's what we're arguing. And they say, consistent with the government's interpretation, well, that language applies to what has to be in the plan. And so this is on page 36 or 37 of the brief. Because the act says, such plan shall assure compliance and not EPA shall assure compliance, there could be no violation of the five year compliance deadline until either a state or EPA published a plan. So that's Sierra Club's argument. And that's our argument, too, on the five year language. In any event, the court doesn't have to reach that language now because they didn't plead it. They've made clear in this argument and their briefs that they're not making that argument. And if and when a federal plan comes out, we can finalize, we can see what it says with respect to the five years. Finally, just on the merits and the meaning of the two year language, we think the district court's analysis is entirely right on this. The within two years applies to the state, state action, not the federal plan action. The rule of last antecedent fully supports that meaning. And if you step back and look at the bigger structure of this provision, the state has one year to submit its initial plan and the EPA has a half year to get back to it. And then we have this potential extended back and forth. And it doesn't make sense to flatly mandate that at the two year mark when that back and forth could still be going on, that the federal government has to come in with a final federal plan. That not only has a federal plan, but addresses all parts of it. So just so that we're clear here, the statute, you agree that the statute is clear that EPA has to promulgate a guideline, right? Yes. And we admit in the summary judgment briefing below, one of their three claims that we were beyond the five years, district court has ordered a remedy on that. We did not appeal. And you agree that the state has a non-discretionary duty to submit a plan to EPA within a year? I don't think the state can be sued under 7604A. Understood. But there's a clear one year deadline for the state. But there's a clear one year deadline. And you agree that there's a clear 180 day deadline for EPA to approve or disapprove with reasons the state plan? Yes. The administrator shall approve or disapprove any state plan within 180 days. That 180 days is right after the operative language. And you agree that two years from the guideline is the last time when the state may submit an approvable plan if their first plan was disapproved? I don't agree that the state is to do that by the two year mark. But at the end of B2, there's no time limit on any state may modify and resubmit a plan which has been disapproved by the administrator. So we think, EPA thinks, that if it's beyond the two year mark, the state's like, we want another try. You just said our plan is not approved. So you think that the way that this statute is best interpreted is if the state submits a plan, EPA disapproves it and says we're disapproving it because it doesn't have A, B, and C. And then the state resubmits the same plan without addressing A, B, and C. And then that gets disapproved again for the same reasons. The state could keep resubmitting the same plan and keep this ball rolling indefinitely and that Congress, that that's what Congress really meant when they have that language. It said that the state may resubmit a plan. It says modify and resubmit. So if it's the same plan, I think maybe, no, it has to be, they have to modify and resubmit. And I think there's probably enough flexibility here that if the state's trying to gain the system, that EPA can move forward. There's no bar on EPA. You know, there's no language in here that says EPA cannot issue a federal plan. Exactly. That's what I was trying to get you to concede. Okay. So how do we concede that? Then what does the last sentence of B3 mean if it doesn't mean that that plan that EPA does has to be created within five years? What it means is that the plan should have a deadline within it of effective date not later than five years after the date the relevant guidelines are promulgated. So the plan needs to assure something. Now, you're right. So you think that Congress would be fine for Congress, given this language, for EPA to submit a plan six years after the guidelines so long as that plan wrote in it, hey, you're supposed to comply within five years of the guideline? There's no deadline. Our read of the statute, there's no deadline that applies to the federal plan. They can bring an unreasonable delay suit. And one of the factors they look at for such a suit, and they haven't here, that's clear. One factor they look at is look at the context and the deadlines that are nondiscretionary and are clear, and use those to inform how much delay is unreasonable. And you also look at agencies' workload and resources and all the other track factors. But I think you could, in deciding whether the delay is unreasonable or not, look at that last sentence of B3 and have it be one consideration. But we don't think it's a hard line on when the federal plan has to be developed and implemented in force. So if I were, you know, I used to be a district court judge, so if I issued an order that said that, you know, you have to comply by my order by doing something within, you know, 30 days, you don't think that EPA would be in violation of my order by coming back, you know, 45 days later and say, well, we intended to, you know, comply within 30 days? I think if you said, EPA, you must do X, and then you said, when you do X, that X shall assure compliance with not later than five years after the date of some other action, we would say, well, you didn't set a deadline for us to do the thing. You said that you need to, the thing you do shall assure compliance with a different triggering event. In any event, I understand the court has questions about this argument. I don't think the court needs to address this language at all because they didn't plead it. They're clear in their brief that they're not making the argument. In fact, they agree with our interpretation, and the court should leave for the next lawsuit, either an unreasonable delay lawsuit or they can bring a mandatory duty suit that's based on this language. But their complaint's clear, Joint Appendix, page 50, that that's not the claim they've brought. They want the two-year deadline for all the reasons we explained. There is no deadline that applies to the Federal plan. All right. Thank you. Thank you. Thank you. EPA is making very clear before this court that the five, that what it envisions here is some sort of indefinite back and forth with the states. And that's not what Congress wanted. I want to make a couple quick points about that and then one brief one on sovereign remaining. On this five-year deadline, it's important to see that under this court's precedent, we would be not in the domain of a mandatory duty suit, but we'd be in one of these unreasonable delay suits because, as EPA says, it is a requirement of the plan. That puts us in this territory where EPA, under this court's precedent, unfortunately, is able to essentially balance Congress's desires against competing demands on the agency. They can blow past the five-year deadline and say, well, we had a lot of other stuff that Congress also wanted us to do if they're under this unreasonable delay scheme. There's a reason Congress set deadlines and has this mandatory duty framework that doesn't allow that. You're not here relying on the five-year deadline. I'm sorry, Your Honor? You're not here relying on the five-year deadline. That's right, Your Honor. And I'm explaining why that wouldn't help us in the way that a mandatory deadline, like this two-year one that we're arguing here, would, because that would allow for this discretion that Congress sought to eliminate in 7429. I also want to be clear that this notion that you even need to have this extensive back-and-forth is a bit of a fallacy. Yes, aides are free to submit plans later. But, again, EPA only has one plan they need to develop. And there's a number of states, you can actually see this in EPA's proposed federal plan for the CISRA units that they've subsequently abandoned. There are states that tell EPA, we want to use a federal plan. So EPA knows, and it knows every time, as long as even one state misses these deadlines, that it's going to have to do a plan. This isn't going to be wasted effort by EPA where maybe the state will get it right. I see that I'm out of time, so I'll pause there unless there's any further questions. All right. Thank you. Thank you.
judges: Henderson, Wilkins, Rao